The Honorable Laura L. McClure State Representative, 119th District State Capitol, Room 278-W Topeka, Kansas 66612-1504
Dear Representative McClure:
You request our opinion concerning the authority of the Secretary of the Kansas Department of Health and Environment (KDHE) to regulate confined feeding facilities for swine. You ask a number of questions regarding the Secretary's authority to impose stricter standards than those enacted in 1998 Substitute for House Bill No. 2950, codified at K.S.A. 1999 Supp. 65-1,178 through 65-1,199). You note that those statutes set certain requirements on swine facilities depending on the size of the facility. Your first question is whether the Secretary of KDHE has authority to impose those requirements on facilities of a smaller size than indicated in the statutes.
In considering the powers of the Secretary of KDHE to regulate a swine finishing facility, the Kansas Supreme Court stated:
 "Administrative agencies are creatures of statute and their power is dependent upon authorizing statutes, therefore any exercise of authority claimed by the agency must come from within the statutes. There is no general or common law power that can be exercised by an administrative agency."[1]
Thus, we must examine the statutes to determine the Secretary's power to regulate confined feeding facilities for swine. When a statute specifies that its requirements apply only to a facility of a certain size, the Secretary may not apply that statute to a different size facility unless there is another statute or regulation that allows him to do so. K.S.A. 1999 Supp. 65-1,196 addresses the Secretary's general authority to regulate confined feeding facilities for swine, and states in pertinent part:
 "(a) The express adoption or authorization of standards and requirements for swine facilities by this act shall not be construed to prohibit or limit in any manner the secretary's authority to adopt and enforce rules and regulations establishing:
 "(1) Standards and requirements for swine facilities that are in addition to or more stringent than those provided by this act if the secretary determines necessary for the purposes provided by K.S.A. 65-171d
and amendments thereto." (Emphasis added.)
K.S.A. 1999 Supp. 65-171d sets forth the Secretary's responsibilities to prevent water pollution and provides in part as follows:
 "(a) For the purpose of preventing surface and subsurface water pollution and soil pollution detrimental to public health or to the plant, animal and aquatic life of the state, and to protect beneficial uses of the waters of the state and to require the treatment of sewage predicated upon technologically based effluent limitations, the secretary of health and environment shall make such rules and regulations, including registration of potential sources of pollution, as may in the secretary's judgment be necessary to: . . . (2) control the disposal, discharge or escape of sewage . . . and (3) establish water quality standards for the waters of the state to protect their beneficial uses.
. . . .
 "(d) In adopting rules and regulations, the secretary of health and environment, taking into account the varying conditions that are probable for each source of sewage and its possible place of disposal, discharge or escape, may provide for varying the control measures required in each case to those the secretary finds to be necessary to prevent pollution."
These provisions give the Secretary discretion to determine what standards and requirements are necessary to prevent water pollution by swine facilities, and to enact regulations that are in addition to or more stringent than those provided by K.S.A. 1999 Supp. 65-1,178 et seq. In our opinion, enacting more stringent standards includes applying requirements imposed by statute on larger swine facilities to facilities of any size if the Secretary determines that is necessary to effect adequate water pollution control.
It should be noted that several statutes allow the Secretary to impose certain requirements on any confined swine feeding facility regardless of size if he determines the requirements are necessary. For example, K.S.A. 1999 Supp. 65-166a authorizes the Secretary to require a water pollution control permit for a confined feeding facility with an animal unit capacity of less than 300 if the Secretary determines that it has significant water pollution potential. K.S.A. 1999 Supp. 65-171d(g) provides that if a significant water pollution potential is identified for new construction of a confined feeding facility with an animal unit capacity of less than 300, the facility shall be required to obtain a permit from the Secretary.
You next ask whether the Secretary has authority to require more stringent separation distances than those required by statute. Separation distances are set forth in K.S.A. 1999 Supp. 65-171d. Pursuant to the portions of that statute quoted above, and to the authority provided in K.S.A. 1999 Supp. 65-1,196, the Secretary has authority to adopt rules and regulations that impose greater separation distances if the Secretary determines they are necessary to prevent water pollution.
You inquire whether the Secretary may impose more restrictive standards and requirements on confined swine feeding facilities by executive order or whether he must follow the Rules and Regulations Filing Act.[2] Both K.S.A. 1999 Supp. 65-171d and 65-1,196 refer to the Secretary's authority to regulate by adopting rules and regulations. We could find no statutory authority for the Secretary to place requirements on swine facilities by executive order. Therefore, it is our opinion that the Secretary must use the statutory procedure set out in the Rules and Regulations Filing Act.
Your next question is whether the Secretary may impose more stringent requirements to control odor from swine facilities. K.S.A. 65-159 gives the Secretary power and authority to examine nuisances, sources of filth and causes of sickness that may be injurious to the health of the inhabitants of any county within the State. If a nuisance, source of filth or cause of sickness is found to exist on any property, the Secretary may order the owner or occupant of the property to remove the nuisance, source of filth or cause of sickness. Additionally, K.A.R.28-18a-20 allows the Secretary to deny, suspend, revoke or terminate a permit or certification for a confined feeding facility for swine if it is found to violate K.S.A. 65-159. Whether odor from a swine facility constitutes a violation of K.S.A. 65-159 would depend on the specific fact situation.
K.S.A. 1999 Supp. 65-1,187 addresses swine facility odor control. It requires a facility with an animal unit capacity of 1,000 or more to submit an odor control plan which must be approved by KDHE as a condition of issuance of a permit. The statute also provides:
 "(c) In promulgating rules and regulations governing odor control plans, the secretary shall take into consideration different sizes of facilities and other relevant factors."
This provision arguably authorizes the Secretary to enact regulations requiring odor control plans for facilities with an animal unit capacity of less than 1,000; because it can be read more than one way, the agency has authority to interpret its provisions.[3] The current regulation concerning odor control does not provide for an odor control plan for facilities with a capacity of less than 1,000.[4] Because odor control is not addressed in K.S.A. 1999 Supp. 65-171d, the authority contained in K.S.A. 1999 Supp. 65-1,196 for the Secretary to enact more stringent requirements through the adoption of rules and regulations to prevent water pollution would not apply to odor control.
The Kansas Air Quality Act[5] gives the Secretary authority to regulate in this area. The Secretary is given the power to adopt rules and regulations implementing the Act[6] and to issue orders, permits and approvals as may be necessary to effectuate the purposes of the Act.[7] The Secretary is required to classify air contaminant sources which, in the Secretary's judgment, may cause or contribute to air pollution.[8] "Air pollution" is defined as:
 "[T]he presence in the outdoor atmosphere of one or more air contaminants in such quantities and duration as is, or tends significantly to be, injurious to human health or welfare, animal or plant life, or property, or would unreasonably interfere with the enjoyment of life or property."[9]
"Air contaminant" is defined to include odorous substances.[10]
The Act provides that:
 "No person shall construct, own, operate, install, alter or use any air contaminant emission stationary source which, in accordance with rules and regulations, the secretary finds may cause or contribute to air pollution, unless an appropriate approval or permit has been issued for the source by the secretary under this act. . . ."[11]
"`Emission' means a release into the outdoor atmosphere of air contaminants."[12] "`Stationary source' means any building, structure, facility or installation which emits or may emit any air contaminant."[13] The rules and regulations adopted pursuant to this Act[14] do not specifically include emissions by swine facilities; however, in our opinion, the Act is broad enough to give the Secretary authority to include regulations regarding odor from swine facilities. We recognize that measuring emissions from a swine facility may be difficult and, therefore, we do not opine on whether in actuality it is possible or practical to use the Act as a mechanism to control odor from swine facilities.
You next inquire whether the Secretary has authority to impose the same requirements on existing swine facilities of any size. K.S.A. 1999 Supp. 65-1,196 provides in pertinent part:
 "The express adoption or authorization of standards and requirements for swine facilities by this act shall not be construed to prohibit or limit in any manner the secretary's authority to adopt and enforce rules and regulations establishing:
. . . .
 (2) standards and requirements for swine facilities that exist on the effective date of this act and that are not subject to the standards and requirements provided by this act."
This provision allows the Secretary to enact regulations for existing swine facilities. As discussed in our responses to your previous questions, the Secretary may adopt regulations effecting facilities of any size if the Secretary determines the regulations are necessary to prevent water or air pollution.
Finally, you question whether the Secretary may be site specific in imposing additional requirements for confined feeding facilities for swine. You specifically ask whether the Secretary may impose additional restrictions for new or existing facilities located in sensitive groundwater areas as referred to in K.A.R. 28-18a-32. That regulation allows KDHE to require new swine facilities with an animal unit capacity of 3,725 or more or existing facilities that wish to expand to an animal unit capacity of 3,725 or more to line their swine waste-retention lagoons or ponds with an impermeable synthetic membrane liner. The regulation does not apply to smaller facilities, however the provisions of K.S.A. 1999 Supp. 65-171d and 65-1,196 that allow the Secretary to enact rules and regulations with more stringent standards for swine facilities to prevent water pollution would apply to facilities in sensitive groundwater areas. Several statutes and regulations allow the Secretary to be site specific in determining what requirements to place on a specific facility. K.S.A. 1999 Supp. 65-166a(f) allows the Secretary to require a permit for a facility with an animal unit capacity of less than 300 "if the secretary determines that such facility has significant water pollution potential." K.S.A. 1999 Supp. 65-171d(d) provides:
 "In adopting rules and regulations, the secretary of health and environment, taking into account the varying conditions that are probable for each source of sewage and its possible place of disposal, discharge or escape, may provide for varying the control measures required in each case to those the secretary finds to be necessary to prevent pollution. . . ." (Emphasis added.)
K.A.R. 28-18a-2 requires any confined feeding facility for swine, regardless of size, to obtain a permit if the secretary determines that it presents a significant water pollution potential. Another regulation that addresses the design and construction of animal waste management systems states in pertinent part:
 "If site topography, operating procedures, experience, and other available information indicate that more than the minimum standards of design, construction, and maintenance are required to effect adequate water pollution control, additional provisions may be required."[15]
K.A.R. 28-18a-18(b) provides:
 "Any swine facility shall, when required by the department, provide for the installation and sampling of groundwater monitoring wells or the sampling of existing wells in the vicinity of waste-retention lagoons or ponds, waste treatment systems, land application sites, or other areas either known to be or potentially impacted by swine or other process wastes, or where warranted by groundwater, geologic, or construction conditions."
In summary, Kansas statutes give the Secretary of KDHE discretion to determine what requirements and standards are necessary to prevent water pollution by a confined feeding facility for swine. The Secretary may enact rules and regulations that impose requirements on swine facilities of any size if the Secretary determines the requirements are necessary to prevent water pollution. The Secretary has authority to adopt rules and regulations imposing greater separation distances for confined feeding facilities for swine to prevent water pollution. The Secretary may enact regulations to control odor from confined feeding facilities for swine under the Kansas Air Quality Act. Additionally, the Secretary may adopt rules and regulations for confined feeding facilities for swine that were in operation on May 7, 1998, and are not subject to the standards and requirements provided by K.S.A. 1999 Supp. 1,178 et seq. Different standards and requirements may be imposed by the Secretary on swine facilities based on site conditions if those standards and requirements are necessary to prevent water pollution.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm
[1] Pork Motel, Corp. v. Kansas Dept. of Health Environment,234 Kan. 374, 378 (1983).
[2] K.S.A. 77-415 through 77-437.
[3] State ex rel. Stephan v. Kansas Racing Commission, 246 Kan. 708
(1990).
[4] K.A.R. 28-18a-15.
[5] K.S.A. 1999 Supp. 65-3001 et seq.
[6] K.S.A. 1999 Supp. 65-3005(a).
[7] K.S.A. 1999 Supp. 65-3005(c).
[8] K.S.A. 1999 Supp. 65-3007(a).
[9] K.S.A. 1999 Supp. 65-3001(c).
[10] K.S.A. 1999 Supp. 65-3002(a).
[11] K.S.A. 1999 Supp. 65-3008(a).
[12] K.S.A. 1999 Supp. 65-3002(e).
[13] K.S.A. 1999 Supp. 65-3002(l).
[14] K.A.R. 28-19-1 et seq.
[15] K.A.R. 28-18a -12(a).